## In re ULRICH.

District Court, S. D. New York.
Feb. 8, 1937.

Stephen R. J. Roach, of White Plains, N. Y., for objecting creditor.

David Tepp, of White Plains, N. Y., for bankrupt.

PATTERSON, District Judge.

The bankrupt filed a voluntary petition in bankruptcy on February 19, 1936, show-

ing no assets. In due course he applied for discharge. A creditor, one Tuite, appeared in opposition and filed specifications. The referee to whom the matter was referred took testimony and recommended that the bankrupt be given his discharge.

The specification, after alleging that Tuite was a creditor, alleged: "That the said bankrupt has concealed certain assets with the intent to defraud, hinder and delay his creditors, said assets consisting of all the capital stock in a certain corporation, M. S. Ulrich, Inc., the bankrupt having attempted to place said stock in the names of certain 'dummies' for the purpose of concealing the real ownership thereof and that the said bankrupt failed to disclose in his schedules herein the ownership of said stock which stock is substantial in value."

The evidence offered by the objecting creditor showed that prior to June, 1931, the bankrupt conducted a garbage disposal business, having contracts with municipalities. In June, 1931, he caused a corporation, M. S. Ulrich, Inc., to be formed, and the corporation has conducted the same kind of business ever since. At an examination of the bankrupt in supplementary proceedings in October, 1931, which examination was marked in evidence, the bankrupt stated under oath that he was president and treasurer of the company, his brother was secretary and his daughter was vice president, and that all the stock in the company was owned by one Campbell, who worked for the company as a driver. The bankrupt admitted in this proceeding that he is still the president of the company. Campbell, called as a witness in this proceeding, testified that he had worked for the bankrupt individually and had later worked for the company; that he never owned any stock in the company; that the bankrupt had told him "he was going to put some things in my name as he was in some trouble"; that he was merely an employee and had ceased to work for the company in 1932. The "trouble" referred to was undoubtedly the claim of the objecting creditor, which was reduced to judgment for $7,000 in September, 1931. The bankrupt offered no proof in contradiction of these facts.

The case then is one where the bankrupt, indebted to the objecting creditor and unwilling or unable to pay the debt, sought to protect his business by resorting to the device, altogether too common, of incorporating the business and placing the stock in the name of an employee who had no real interest. The stock was in reality that of the bankrupt all along. The transaction was manifestly a concealment of the bankrupt's property with intent to hinder, delay, and defraud the objecting creditor. The concealment was a continuing one down to the time of bankruptcy.

The objecting creditor therefore made out a case within subdivision (4) of section 14b of the Bankrupt Act, as amended (11 U.S.C.A. § 32 (b) (4), to the effect that the bankrupt shall not have a discharge where he has "at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition, transferred, removed, destroyed, or concealed * * * any of his property, with intent to hinder, delay, or defraud his creditors." While the concealment commenced several years before bankruptcy, it continued down to the time of bankruptcy and is within the scope of the statute. James v. Stone & Co., 181 F. 1021 (C.C.A.4). The specification would have been in better form if it had followed the statutory language more closely and had set forth that the concealment was within one year prior to bankruptcy. But the bankrupt did not object to the specification as inadequate. He went to trial on the merits without objection. This amounted to a waiver of any formal defect in the specification. In re Wakefield, 207 F. 180 (D.C.N.Y.); In re Singer, 251 F. 51 (C.C.A.2).

The objecting creditor also proved a case of false oath, in that the bankrupt knowingly and fraudulently failed to list the shares of stock as property in his sworn schedules. This likewise is a bar to discharge under subdivision (1) of section 14b, as amended, 11 U.S.C.A. § 32 (b) (1), read with section 29 of the Act (11 U.S.C.A. § 52). The specification is somewhat informal in raising this ground; it should have stated that the bankrupt knowingly and fraudulently made false oath in that he failed to disclose the stock in his schedules. The specification as it stood, however, put the bankrupt on fair notice of the case which the objecting creditor intended to prove. The bankrupt made no motions against the specification; if he had, the specification would doubtless have been amended and split into two

parts. I am of opinion that the defect in it was waived. In re Wakefield, supra; In re Singer, supra.

The referee treated the case as if it were one under subdivision (1) of the section, relative to concealment of assets from a receiver, trustee, marshal, or other officer of the court, and was of the view that since there was no receiver or trustee in the case there was no cause for denial of discharge. This was a misconception of the specification. The referee also commented on the fact that the objecting creditor filed no proof of claim. The fact that the objecting creditor filed no proof of claim is of no importance. In re Nathanson, 155 F. 645 (D.C.N.Y.); In re Ruhlman, 279 F. 250 (C.C.A.2). She was listed as a creditor in the bankrupt's schedules, and her status as a creditor was never questioned by the bankrupt.

The exceptions to the report will be sustained and discharge denied.