WIGGINS, Circuit Judge:
George Edward Adeeb (Adeeb) appeals from the district court’s order denying his appeal from a bankruptcy court judgment. The bankruptcy court found that Adeeb transferred property out of his estate within one year of bankruptcy with intent to hinder or delay his creditors. It therefore denied Adeeb’s discharge in bankruptcy under 11 U.S.C. § 727(a)(2)(A) (1982). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d) (Supp. II 1984).
FACTS AND PROCEEDINGS BELOW
Adeeb operated several gas stations in the Los Angeles, California area. He experienced financial difficulties during a period of fluctuating gasoline prices. One of his creditors, ITL, Inc. (ITL), demanded that Adeeb secure his debts to it with deeds of trust on his real property. ITL threatened to seek an attachment against all of Adeeb’s property if he did not comply.
Faced with these threats, Adeeb consulted with Cooper, an attorney with little or no bankruptcy experience. Cooper advised Adeeb to transfer title to some of his real property for no consideration to third parties who could be trusted. In reliance on this advice, Adeeb transferred title to several parcels of real property to friends and associates for no consideration. Beneficial ownership at all times remained in Adeeb.
As his financial condition continued to worsen, Adeeb sought advice from Mayer, a bankruptcy attorney. Mayer advised Adeeb to reverse the transfers and to disclose them to his creditors. Adeeb immediately began to reverse the transfers. While he was in this process, Adeeb called *1342 a meeting of his creditors. At that meeting, he told his creditors about the earlier transfers and stated that he was reversing them.
On April 6, 1983, after the meeting at which Adeeb disclosed the transfers, three of Adeeb’s trade creditors filed an involuntary bankruptcy petition against him. Adeeb decided not to contest that petition and filed a voluntary bankruptcy petition on April 11, 1983, seeking a discharge of his indebtedness. The transfers from Adeeb to his friends and associates were made withip one year of the filing of these petitions. Adeeb was apparently unable to recover all' of the transferred property before the petitions were filed.[1]
In June, 1983, plaintiff First Beverly Bank filed a complaint in the bankruptcy court seeking to block Adeeb’s discharge in bankruptcy under 11 U.S.C. § 727(a)(2)(A) (1982). In the alternative, First Beverly Bank sought to have Adeeb’s debt to it held nondischargeable under 11 U.S.C. § 523 (1982 & Supp. II 1984). On the same date, plaintiffs Consumers Oil Company, R & M Petroleum Company, and H.F. Cox, Inc., filed a complaint against Adeeb also seeking relief under sections 727 and 523.,
The bankruptcy court consolidated the two actions. On the section 727 claims, the court found that Adeeb, within one year of his petition in bankruptcy, had transferred property without consideration and with actual intent to hinder or delay his creditors. It therefore held that section 727(a)(2)(A) barred his discharge. The court’s decision on the section 727 claims made it unnecessary for the court to reach the section 523 claims.
Adeeb appealed the bankruptcy court’s decision to the district court. After a hearing, the district court issued an order denying Adeeb’s appeal, and Adeeb appealed to this court.
STANDARD OF REVIEW
A bankruptcy court’s findings of fact are reviewed for clear error, and its conclusions of law are subject to de novo review. In re Devers, 759 F.2d 751, 753 (9th Cir.1985). The court’s finding that Adeeb transferred his property with intent to defraud creditors is a finding of fact. See Losner v. Union Bank, 374 F.2d 111, 112 (9th Cir.1967) (per curiam).
DISCUSSION
Adeeb argues that three grounds support reversal of the bankruptcy court’s denial of his discharge: (1) the court’s finding that he intended to hinder or delay his creditors is clearly erroneous; (2) his actions could not have harmed his creditors, and such actions should not be grounds for denying a discharge; and (3) a debtor who voluntarily reverses transfers penalized by section 727(a)(2)(A) should not be denied discharge of his debts. We address each of these contentions in turn.
A. Actual Intent to Hinder, Delay, or Defraud a Creditor
The bankruptcy court denied discharge of Adeeb’s debts pursuant to 11 U.S.C. § 727(a)(2)(A) (1982). Section 727(a)(2)(A) provides that a debtor shall not be granted a discharge if within one year of the filing of a petition in bankruptcy he “has transferred, removed, destroyed, mutilated, or concealed” his property “with intent to hinder, delay, or defraud a creditor.”
Section 727’s denial of discharge is construed liberally in favor of the debtor and strictly against those objecting to discharge. In re Devers, 759 F.2d 751, 754 (9th Cir.1985). Accordingly, discharge of debts may be denied under section 727(a)(2)(A) only upon a finding of actual intent to hinder, delay, or defraud credi *1343 tors. Constructive fraudulent intent cannot be the basis for denial of a discharge. Id. at 753. However, intent “may be established by circumstantial evidence, or by inferences drawn from a course of conduct.” Id. at 753-54.
The bankruptcy court found that Adeeb transferred real property out of his estate with actual intent to hinder or delay a creditor. Adeeb argues that the court’s finding of actual intent is clearly erroneous. He contends that circumstances surrounding the transfers and events subsequent to the transfers indicate that he did not actually intend to defraud his creditors. In support of this argument, Adeeb points out that he disclosed the transfers to his creditors and recovered or attempted to recover the property. He also points out that he transferred the property on the advice of his attorney and that he intended to protect the property from one creditor for the benefit of the other creditors.
Adeeb’s reliance on circumstantial evidence and inferences from his conduct to prove that he lacked actual intent is misplaced. Adeeb admitted that he transferred the property intending to put it out of the reach of one of his creditors. When a debtor admits that he acted with the intent penalized by section 727(a)(2)(A), there is no need for the court to rely on circumstantial evidence or inferences in determining whether the debtor had the requisite intent. Under these circumstances, the district court was not clearly erroneous in finding that Adeeb acted with actual intent to hinder or delay a creditor.
Further, Adeeb’s claim that he lacked actual intent to hinder or delay his creditors because he relied on the advice of his attorney is mistaken. Generally, a debtor who acts in reliance on the advice of his attorney lacks the intent required to deny him a discharge of his debts. See, e.g., Hultman v. Tevis, 82 F.2d 940, 941 (9th Cir.1936); In re Nerone, 1 B.R. 658, 660 (Bankr.S.D.N.Y.1979). However, the debtor’s reliance must be in good faith. See Hultman, 82 F.2d at 941; Nerone, 1 B.R. at 660. In this case, the bankruptcy court found that both Cooper and Adeeb “knew that the purpose of the transfers was to hinder or delay creditors of the debtor.” Such a finding precludes the defense of good faith reliance on the advice of an attorney even if the client is otherwise innocent of any improper purpose. A debtor who knowingly acts to hinder or delay his creditors acts with the very intent penalized by section 727(a)(2)(A).
Adeeb is also mistaken in his assertion that he lacked actual intent because he intended to protect some of his creditors. Our inquiry under section 727(a)(2)(A) is whether Adeeb intended to hinder or delay a creditor. If he did, he had the intent penalized by the statute notwithstanding any other motivation he may have had for the transfer. Cf. Matter of Trinity Baptist Church, 25 B.R. 529, 532-33 (Bankr.M.D.Fla.1982) (admirable of debtor to attempt to protect assets from one creditor for benefit of all creditors; nevertheless, the result is hinderance and delay of creditors that makes the transfer voidable). Further, the statute requires only that the debtor make the transfer with intent to hinder, delay, or defraud “a creditor.” There is no requirement that the debtor intend to hinder all of his creditors. See Matter of Goldberg, 2 B.R. 15, 17 (Bankr.S.D.Fla.1979).
B. Injury to Creditors
Adeeb next argues that his discharge should not be denied because these transfers did not injure his creditors. He argues that he was reversing the transfers when the involuntary petition was filed and none of his creditors has been injured. We reject this contention. Our decision on this point is controlled by our prior holdings that lack of injury to creditors is irrelevant for purposes of denying a discharge in bankruptcy. Duggins v. Heffron, 128 F.2d 546, 549 (9th Cir.1942); Harris v. Baker, 86 F.2d 936, 937-38 (9th Cir.1936).
C. Disclosure of Transfers and Recovery of Property Transferred
Finally, Adeeb contends that a debtor who is able to recover improperly transfer *1344 red property prior to the filing of a bankruptcy petition should not be denied a discharge of his debts. In other words, Adeeb urges us to read section 727(a)(2)(A) so as to require that the property “transferred” with the requisite intent within one year of the filing of the bankruptcy petition must also remain transferred on the filing date. As far as we have been able to determine, this is a question of first impression under the new Bankruptcy Code.[2]
We are concerned in this case with section 727(a)(2)(A)’s prohibition of transfers within one year of bankruptcy. The resolution of Adeeb’s contention turns on the meaning of “transferred” as it is used in section 727(a)(2)(A). The bankruptcy act’s general definition of “transfer,” found in 11 U.S.C. § 101(48) (1982), is of little help in resolving the issue before us.[3] The legislative history of section 727(a)(2)(A) also sheds no light on the proper interpretation of “transferred” in this context. If Congress has not defined a term in a manner that is helpful in a given context and the legislative history does not aid in the proper interpretation of the term, “our best approach is to construe the statutory language in accordance with its purpose.” Burroughs v. Operating Engineers Local Union No. 3, 686 F.2d 723, 727 (9th Cir.1982) (citing Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979)).
In our view, reading “transferred” as used in section 727(a)(2)(A) to mean “transferred and remained transferred” is most consistent with the legislative purpose of the section. The language of sec *1345 tion 727(a)(2)(A) demonstrates that Congress intended to deny discharge to debtors who take actions designed to keep their assets from their creditors either by hiding the assets until after they obtain their discharge in bankruptcy or by destroying them. See D. Cowans, Cowans Bankruptcy Law and Practice § 5.20 (interim ed. 1983). The only type of transfer that has the effect of keeping assets from creditors is a transfer in which the property remains transferred at the time the bankruptcy petition is filed.
Our conclusion is supported by the purpose of the Bankruptcy Code. As we have said:
The bankruptcy statutes have a twofold purpose — first, to secure the equitable distribution of the bankrupt’s estate among his creditors, [citations omitted] and, second, “ ‘to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh from the obligations and responsibilities consequent upon business misfortune.’ ” Matter of Esgro, Inc., 645 F.2d 794, 798 (9th Cir.1981) (quoting Williams v. United States Fidelity & Guarantee Co., 236 U.S. 549, 554-55, 35 S.Ct. 289, 290, 59 L.Ed. 713 (1915)).
In re Devers, 759 F.2d 751, 754-55 (9th Cir.1985). Both of these purposes are served by reading “transferred” in section 727(a)(2)(A) to mean “transferred and remained transferred.” First, this reading encourages honest debtors to recover property they have transferred during the year preceding bankruptcy. Encouraging debtors to recover improperly transferred property facilitates the equitable distribution of assets among creditors by ensuring that the trustee has possession of all of the debtor’s assets. Second, this reading permits the honest debtor to undo his mistakes and receive his discharge.
We are also persuaded by practical considerations that a discharge should not be denied in the present situation. It is not uncommon for an uncounseled or poorly counseled debtor faced with mounting debts and pressure from his creditors to attempt to protect his property by transferring it to others. Upon later reflection or upon obtaining advice from experienced bankruptcy counsel, the debtor may realize that his original transfer of the property was a mistake. If the debtor is informed that his mistake bars him from a discharge in bankruptcy, he will have no incentive to attempt to recover the property or to reveal its existence to his creditors. Rather, he will have a strong incentive to continue to hide his assets.
If possible, these results should be avoided. They are avoided by reading “transferred” in section 727(a)(2)(A) to mean that the property transferred within one year of bankruptcy must remain transferred at the time the bankruptcy petition is filed. Such a reading encourages debtors to reveal transfers and to attempt to recover the property previously transferred. It also gives bankruptcy attorneys who are retained after the debtor has made some mistakes an incentive to see that those mistakes are corrected.
We conclude that a debtor who transfers property within one year of bankruptcy with the intent penalized by section 727(a)(2)(A) may not be denied discharge of his debts if he reveals the transfers to his creditors, recovers substantially all of the property before he files his bankruptcy petition, and is otherwise qualified for a discharge.
Our conclusion is consistent with cases interpreting “concealed” as used in section 727(a)(2)(A). Those cases state that a “debtor who fully discloses his property transactions at the first meeting of creditors is not fraudulently concealing property from his creditors.” In re Waddle, 29 B.R. 100, 103 (Bankr.W.D.Ky.1983); see 4 Collier on Bankruptcy ¶ 727.02[6][b] (15th ed. 1985). Although a concealment may be undone simply by disclosing the existence of the property, disclosure does not undo a transfer. However, a transfer may be undone by recovering the property.
As we have indicated, Adeeb may not have recovered all of the transferred property prior to the time his creditors filed the *1346 involuntary bankruptcy petition in this case. Therefore, he may not meet the requirement we have articulated above of recovering substantially all the transferred property prior to the filing of the bankruptcy petition. However, our discussion assumes the filing of a voluntary petition by the debtor. In that situation, the debtor controls the time of filing the petition. He is therefore able to time the filing to allow recovery of substantially all of his property.
In this case, Adeeb was not allowed to time the filing of his petition.[4] Rather, an involuntary petition was filed by his creditors soon after he told them about the transfers. It would be inequitable for us to allow the voluntary debtor to plan the filing of his bankruptcy petition so as to allow himself time to recover all the property he transferred and yet to allow the creditors of a debtor to cut him off in his attempt to recover the property by filing an involuntary petition and thereby deny the debtor a discharge of his debts. Cf. In re Andreotti, 16 B.R. 28, 31 (Bankr.E.D. Cal.1981) (“It would be inequitable for this Court to allow the voluntary debtor to plan out his exemptions well in advance of the date he volitionally files his petition and yet to deny the involuntary debtor any such opportunity to plan his exemptions.”).
We therefore hold that a debtor who has disclosed his previous transfers to his creditors and is making a good faith effort to recover the property transferred at the time an involuntary bankruptcy petition is filed is entitled to a discharge of his debts if he is otherwise qualified. We emphasize that the debtor must be making a good faith effort to recover the property prior to the filing of the involuntary petition, and he must actually recover the property within a reasonable time after the filing of the involuntary petition. A debtor’s failure to establish these conditions would justify relief under section 727(a)(2)(A).
The record does not indicate whether Adeeb has recovered substantially all of the property he transferred and, if he has, whether he did so prior to the time the bankruptcy petition was filed or within a reasonable time after it was filed. We therefore remand this case to the district court for further proceedings not inconsistent with this opinion. Because the bankruptcy court did not reach the section 523 issues, we express no opinion on the plaintiffs’ claims under that section.
REVERSED AND REMANDED.

. In his testimony at trial, Adeeb indicated that he had recovered all of the property before the petitions were filed. At that time some questions were raised regarding one of the parcels he had transferred. Those questions were not adequately resolved. In oral argument before this court, Adeeb’s attorney conceded that not all of the property had been recovered before the petitions were filed. The attorney was not certain whether all of the parcels had been recovered by the time of oral argument before this court.

. Collier on Bankruptcy states that a “split of authority ... exists concerning property that has been transferred within the statutory period but then retransferred to the debtor before he filed his petition.” 4 Collier on Bankruptcy ¶ 727.02[2] (15 ed. 1985). The cases cited for this proposition are not useful in deciding the issue before us.
All of the cases cited in Collier were decided under the old Bankruptcy Act. That Act contained two similar grounds for denial of a discharge in bankruptcy. First, it provided for denial of discharge to a debtor who committed an offense punishable under the bankruptcy laws by imprisonment. Bankruptcy Act of 1898 § 14(b)(1), 30 Stat. 544, 550 (1898) (repealed 1978). One of these bankruptcy offenses was knowingly and fraudulently concealing property from the trustee in bankruptcy. Id. § 29(b)(1), 30 Stat. 544, 554 (1898) (current version at 18 U.S.C. § 152 (1982).). Second, the Act provided for denial of discharge to a debtor who transferred property with the intent to hinder, delay, or defraud his creditors. Id. § 14(b)(4), 32 Stat. 797, 797-98 (1903) (current version at 11 U.S.C. § 727(a)(2)(A) (1982)); see In re Jacobson, 9 F.2d 139, 140-41 (D.S.D.1925).
Many of the old cases held that a debtor who transferred property out of his estate would be denied a discharge of his debts only if the, property transferred remained transferred at the time the petition for bankruptcy was filed. See, e.g., In re Williams, 286 Fed. 135, 140-41 (W.D. S.C.1921), and cases cited therein. Others, however, held that the debtor would be denied discharge of his debts regardless of whether he ■ recovered the property prior to filing a bankruptcy petition. See, e.g., In re Jacobson, 9 F.2d at 141-42. As the Jacobson court points out, the difference in these cases can be explained by the existence of the two similar grounds for denying a discharge under the old Act. Id. at 141. Section 29(b)(1) required that the transfer be a fraud on the trustee in bankruptcy, but section 14(b)(4) had no such requirement. A transfer is a fraud on the trustee in bankruptcy only if it exists at a time when there is a trustee; i.e., after filing of the bankruptcy petition. Id.
Confusion arises because many of the cases granting a discharge do not specify under which section they are decided. Williams is such a case. See Williams, 286 Fed. at 141, and cases cited therein. However, it is fairly clear that Williams was decided under section 29(b)(1) because Williams requires that the concealment be " ‘from his trustee,' ” which is the language of section 29(b)(1). Id. at 140. Further, all of the cases cited in Williams either specifically cite section 29(b)(1) or do not state under which section they are decided. Id.
When Congress enacted the Bankruptcy Code in 1978, it dropped the section denying a discharge in bankruptcy for bankruptcy offenses. 92 Stat. 2549, 2609 (1978). Although we could rest our decision on the literal language of Williams and cases like it, we decline to do so because of the confusion surrounding those cases.

. Section 101(48) provides:
“transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor’s equity of redemption ____

. The fact that Adeeb filed a voluntary petition after the filing of the involuntary petition does not change this analysis. The involuntary petition in this case began the bankruptcy process. Adeeb’s voluntary petition was filed only in response to the involuntary petition.